Ellsworth, J.
The matter in dispute between the parties is the title to the locus in quo. Both hold under George and Sarah Montague, who are admitted to have had the title at the time of their decease, the plaintiff under Justus Montague of one of the heirs, and the defendant under Abigail Montague another of the heirs.
The estate (for I speak of it as one,) was distributed among the several heirs in 1816, and has ever since been held and enjoyed in severalty by said heirs, or their tenants and grantees, *330 and the question now made is, where the distribution locates the respective shares among the heirs. If the part set off to Abigail embraces the locus in qua, the judgment below is correct and must stand;, if the locus falls into, tlie part set to Justus, the judgment is wrong and must be reversed. So too, the [ *404 ]. judgment must be reversed, if, *in coming to the result, the judge adopted, in finding that this land was set to Abigail, erroneous principles of law.-
The judge has found that, by the distribution and location, the' land in question was set off to Abigail; that is, that in fact it fell within the description and boundaries of her share’, and became hers in severalty, if there was no error in his receiving the evidence which he did re'ceive, going to show this fact.
For obvious reasons, if the distribution and- location gave the land to Abigail, its location is conclusive upon those Who claim in severalty under Justus, for, aside from this distribution, there is no severalty of title in any of the heirs of George and Sarah Montague, or those who hold their rights in the entire" lot which they left. All are then tenants' in common, and on that ground alone, were the fact so, the plaintiff must fail in his- action. Besides, no appeal was taken from the distribution. We do not understand that the plaintiff sets up a title by possession, to the exclusion of those who claim under Abigail,, nor can there be the' slightest pretence for any such thing, since neither the plaintiff nor his ancestor ever occupied this land except as- tenants' of those heirs' who always recognized and upheld thd distribution of 18Í6. If any body has title by possession,, it is on the other side, if that defense had been distinctly set up on the trial'.
In one part of the motion the plaintiff would seem to object to the' introduction of the distribution, but the reason assigned for it shows that he does not object to proof of a distribution, nor of this distribution, if taken with his construction* of it; for he insists that, under that construction', this piece of land- is given in severalty to Justus and not to Abigáil; so that his- objection does not go to the distribution itself, for a distribution is essential to his right to sue the defendant, but to the meaning, force and application of the distribution when admitted; Or, in; other words, lie claims that the distribution, does not prove the defendant’s title to the land in question.
And this brings us to the question,and the only question which* Iras been seriously pressed upon our consideration- by [ *405 J *the plaintiff’s counsel, to wit, is parol, proof, such as act's or conduct, circumstances, agreements of the parti'eá and the like, accompanying- the act of distribution,, *331 admissible to identify the boundaries referred to1 in the distribution ; or, in other words, may a latent ambiguity be explained by evidence aliunde.
The argument is’ that the. words of the distribution, ex vi termini, exclude the land from Abigail’s share and put it into the share of Justus, for Abigail’s share, (seventy-two and x80ths links) is described as being “ next south of Martha’s seventy-two and fyths links,” and Martha’s seventy-two and T80-ths links as being “ on the north side of the lot.” . As these two shares avowedly lie north of the share of Justus’, the plaintiff insists that we must begin on the north side- of the lot and measure off southward far enough to satisfy the shares of Martha and Abigail, when we shall reach the north line of Justus, which, on this theory, is found to be’ north of the piece of land in question, giving it to Justus.
Now every thing turns on the question of fact, where, at what point, did the distributors begin to measure- off to Martha her share, and what did they call and treat as the “ north side of the lot?” And may this fact be shown by parol ? The court has found that the distributors began on the north side of the “lot,” as it was treated and considered to be in 1816', the time when it was distributed. The Warner lane (one rod wide on the north side of the original lot of George and Sarah Montague) having been exchanged and fenced off some six years before the distribution, had never thereafter been occupied, treated or considered as a part of the Montague estate. The’ distributors did not so consider it, nor did the ancestor of the plaintiff. Now the question is, can it not be shown by parol evidence ? Can we not see and ought we not to see, on every principle of law and fairness, what the distributors called and treated as “ the north side of the- lot ?”
What, we ask, was the “ lot ” which was’ to be divided, and which was divided in 1816 by the distributors ? The court below say it was the lot as it lay before the- distributors-*for their apportionment among the heirs, so that [ *406 ] they could possess each one his own in severalty, and that they did not include- the Warner lane, which had been exchanged for a rod of equal value on the south. Let it be- that the Warner lane Was not in 1810, in strictness of law, sold, and conveyed in exchange for the rod on the south, and that the rod on the south’ had' not become attached by a formal conveyance to the lot of the heirs, (though the defendant insists that it had and that the- deed is lost) still, the parties then and ever since have' treated it as done-, and have not signified a. wish: to* have it otherwise for forty years past. As we- have said, the location *332 and boundaries of these respective shares having been known, recognized and acquiesced in for so many years, as founded on the distribution of 1816, which located the north line of the Montague lot as it was at that time, we should with the greatest reluctance yield to the claim of the plaintiff, and at this late day break up a distribution so established.
The plaintiff’s counsel claim that the distribution has to do only with the legal title, and that in this view the distributors must be held, as a matter of law, to havé intended the “ lot ” as it had been six years before the distribution, and to have included in the share set to Justus, land which they in fact did not intend to include in his share. We think otherwise. The title, whether legal or equitable, does not necessarily determine the intended boundaries of the distribution. We look rather to what was actually done, and to what the parties intended, if the application of that intent depends upon a latent as distinguished from a patent ambiguity. Suppose this strip of land on the north, instead of being exchanged and separated, had been sold under an order of probate to pay debts, and thereafter occupied by the purchaser, and it should afterwards appear that the deed of conveyance from the administrator was attested bv a person interested, or was not legally acknowledged, or for other reason was imperfect and so the legal title did not pass ; and after this, the rest of the lot is distributed among the heirs, as if the administrator’s conveyance had been in all respects [ *407 ] a *formal one, and had carried the legal title. Would this strip necessarily pass under the distribution, and become a part of one of the distributary shares, because the legal title might carry the north line of the lot north of the fence ? Such a rule of law would be very harsh in its operation, and ■would be too merely technical for the administration of equal justice among the heirs.
Now, the parol evidence objected to, which was received on the trial, went to prove where the distributors fixed the shares of the respective heirs—that the land in dispute fell within the share set to Abigail and not within the share set to Justus. The object was not to prove that real estate was or could be conveyed otherwise than by deed, or had been or could be distributed by parol, nor to contradict or attack the records of a court of probate ; but, as we have said, to locate definitively, a legal and unobjectionable distribution ; to fix it according to the' boundaries agreed upon and adopted by the parties and the distributors.
It appears, further, that in Sept., 1853, this plaintiff recovered judgment in the superior court, in this county, in an action of ejectment against one Charles Wolcott, for some of the land in *333 question. To prevent the plaintiff therein from talcing benefit from that judgment, the present defendant united with said Charles, (who was his tenant,) in an application to the superior court, asking the court, as a court of chancery, to enjoin against any further proceedings under that judgment, for the reasons set forth in their petition. The petition was heard, but for some cause (not material here,) was not sustained. Certain statements made in that petition, (it being signed by the present defendant,) the plaintiff here seeks to avail himself of, as proving, by admission, that although Charles Wolcott was alone sued in the action of ejectment, yet this defendant, being his landlord, became and was a party defendant therein, and therefore ought to be conclusively bound by that judgment, which determines the title to be in this plaintiff. The plaintiff insists that these facts are proved by what is so stated and admitted under the hand of the ^defendant himself. The defendant denies [ *408 ] this, or that the petition contains any evidence or any sufficient evidence of his being a party defendant in that case. The court received the petition as containing evidence and sufficient evidence, in the admission of the defendant, that there was a recovery in the action of ejectment against Charles Wolcott, but held that it contained nothing which conclusively, or even prima facie, proved that the present defendant was a party in that suit; which, as it appears to us, was all that the plaintiff desired to prove by the record. It certainly did not, in view of the court below, prove the fact for which it was offered, for the defendant in the petition merely avers that he was the landlord at the time, but he does not admit that he was cited in, or that he came in as landlord, or that in any capacity he took upon himself the defense of the action, or had even an opportunity to do it. There is, it is true, a little obscurity in that part of the ruling of the court in which it is said that “ the court received said evidence only as containing admissions of the defendant against his interest,” but we think this can not be of any injury to the plaintiff, as the petition was not used to prove, and certainly did not prove, that the present defendant was a party in that suit and concluded by that judgment.
We see no cause for granting a new trial.
In this opinion Hinman and Sanford, Js., concurred. Storrs, O. J., dissented.
New trial not advised.